**Opinion filed March 28, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00324-CV

_____

## IN THE INTEREST OF J.J.W. AND M.S.S., CHILDREN

**On Appeal from the County Court at Law**

**Ector County, Texas**

**Trial Court Cause No. CC-2993-PC**

## MEMORANDUM OPINION

The trial court entered an order terminating the parental rights of the mother and the fathers of J.J.W. and M.S.S. The children's mother has filed a notice of appeal; the fathers have not. We affirm.

In a single issue, the mother challenges the legal and factual sufficiency of the evidence to support the termination of her parental rights. With respect to the legal and factual sufficiency challenges, termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2012). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or

conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001. In this case, the trial court found that the mother committed three of the acts listed in Section 161.001(1). The trial court found that she had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being, had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being, and had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children who had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of their removal from the parent for abuse or neglect. *See id.* § 161.001(1)(D), (E), (O). The trial court also found that termination of the mother's rights was in the best interest of the children. *See id.* § 161.001(2).

The Department's caseworker, Crystal Shelton, testified that J.J.W. was born in July 2005 and M.S.S. was born in November 2007. The children resided in a foster home in Midland beginning in October 2010 when they came into the Department's care. The final trial on the merits in this case commenced on July 18, 2012. The children were removed from the parents' care after a Department investigator witnessed J.J.W.'s father chasing M.S.S. and "swatting her at her head" and then observed marihuana smoke in the apartment. The mother admitted to smoking marihuana in the presence of the children that day. No voluntary placement was available for the children.

Shelton testified that the Department had been involved with the mother on two previous occasions and had provided family based services. Shelton's primary concern with the mother on all three occasions was the mother's drug use. However, Shelton was also concerned with the mother's means of disciplining J.J.W. According to J.J.W., his mother "hits him with a belt on the legs and a hanger in the head" and "pinches him in the genitals every day."

The mother visited the children regularly while this case was pending. However, she failed to complete numerous provisions in the court-ordered service plan as required for the return of her children. The mother failed to demonstrate an ability to secure basic necessities,

2

failed to pay child support, and failed to maintain employment. The mother did not have stable housing, and at the time of the final hearing, she and J.J.W.'s father were living with one of his cousins and admittedly had no room for the children. While the termination proceedings were pending, the mother tested positive for both cocaine and marihuana. The mother admitted at trial that she had refused to go to some of the scheduled drug tests because she knew she "was dirty." She tested positive for cocaine just two weeks before the termination hearing that was held by the associate judge. The mother continued to maintain a relationship with J.J.W.'s father throughout this case. She was even with him when he was arrested for possessing more than two grams of cocaine. J.J.W.'s father also tested positive for marihuana and cocaine during this case. He tested negative for drugs only two times during the pendency of this case. J.J.W.'s father had been in the penitentiary serving a sentence for aggravated robbery from April 2005 to April 2010: most of J.J.W.'s life.

Clear and convincing evidence showed that the mother failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of J.J.W. and M.S.S. and that J.J.W. and M.S.S. had been in the permanent or temporary managing conservatorship of the Department for well over nine months as a result of their removal from the mother for abuse or neglect. We hold that the evidence is legally and factually sufficient to support the trial court's finding made pursuant to Section 161.001(1)(O). Accordingly, we need not determine whether the evidence is sufficient to support the trial court's findings under Section 161.001(1)(D) and (E) as those findings are not dispositive of this appeal. *See* TEX. R. APP. P. 47.1; *In re B.K.D.*, 131 S.W.3d 10, 16 (Tex. App.—Fort Worth 2003, pet. denied).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that

the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

The record shows that the children were doing well in their foster placement and that, if the parents' rights were terminated, adoption by the foster parent is the Department's goal for the children. The foster parent is an appropriate caregiver, has no other children in the home, has bonded with the children, and has expressed a desire to adopt J.J.W. and M.S.S. Both Shelton and her supervisor believed that termination of the parents' rights and adoption by the foster parent, who would provide a drug-free and stable environment, would be in the children's best interest. The foster parent testified that the children had been placed with her since their removal from the parents in 2010. The foster parent testified that the children are happy and well-adjusted in her home and that she has a loving relationship with them. She believes that the children want closure, and she testified that she intends to adopt both of the children.

M.S.S., though young, told her therapist that she did not want to return to her parents and that she wanted to stay with her foster parent. Although J.J.W. expressed an unrealistic desire for "everybody [including his parents and his foster parent] to live together," there was ample evidence that he was happy and doing well in the home with his foster parent and M.S.S. After the last visit with his mother, J.J.W. did not appear to be upset even though his mother had told him that that was the last time he would see her. The supervisor testified that, after that visit, J.J.W.'s performance and behavior at school improved and that having closure and stability (between the associate judge's order of termination and the trial de novo in the county court at law) has helped the children.

The children's therapist, a licensed professional counselor supervisor, also testified that their behavior improved after their last visit with the mother and J.J.W.'s father. J.J.W. received fewer notes from his teacher regarding his behavior, and his grades improved. The therapist testified that the children were attached and bonded with their foster mother and believed that it would be in the best interest of the children to remain with the foster mother.

Based on the evidence presented at trial, which included evidence regarding the desires of the children, the needs of the children, the stability of the foster parent's home, the lack of stability in the mother's home, the mother's continued drug use, and the mother's unwillingness

4

to change her lifestyle or complete the programs that were designed to help her ensure the best interest of her children, the trial court could reasonably have formed a firm belief or conviction that termination of the mother's parental rights would be in the best interest of J.J.W. and M.S.S. We cannot hold that the finding as to best interest is not supported by clear and convincing evidence. The evidence is both legally and factually sufficient to support the finding that termination of the mother's parental rights is in the best interest of J.J.W. and M.S.S. We overrule the mother's sole issue on appeal.

The order of the trial court is affirmed.


JIM R. WRIGHT
CHIEF JUSTICE


March 28, 2013

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.

5